IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRADFORD L. HUEBNER, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) CASE NO. 3:04-0759 |
| | ) JUDGE TRAUGER/KNOWLES |
| DONALD A. TANGWALL, et al., | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Judge Trauger previously referred this action to the undersigned for a Report and Recommendation concerning the amount of damages to be awarded to Plaintiffs following the entry of a default against Defendant Donald A. Tangwall[1] (Docket No. 116). The undersigned held a hearing concerning the issue of damages. *See* Docket No. 126.

### I. Compensatory Damages

With regard to the issue of compensatory damages, Plaintiff Bradford Huebner appeared and testified at the hearing. Plaintiff Huebner testified that he had been the owner of a parcel of property (approximately 137 acres) at the intersection of I-65 and Highway 412 in Columbia, Tennessee. Upon the suggestion of Defendant, Mr. Huebner transferred that property to John Bell Hood Limited Partnership, allegedly for "asset protection." The general partner of John Bell Hood Limited Partnership was Group Headquarters, Inc., a corporation of which Mr.

---

[1] Unless otherwise indicated, the term "Defendant" will be used herein to refer to Donald Tangwall. The Court notes that Cheryl Murray is also a Defendant in this action.

Huebner was President and Treasurer and Mr. Tangwall was Secretary.

Mr. Huebner testified that Defendant, without any authority whatsoever, misrepresented himself to be President of Group Headquarters, Inc., and sold the property without Plaintiff Huebner's approval or authorization, on or about April 7, 2004. According to Mr. Huebner's testimony, the proceeds of the sale of the property should have gone to him. The purchase price was $2.8 million. Mr. Huebner had previously received an offer to purchase the property from another purchaser for $3 million. Thus, as a result of Defendant's fraudulent conduct, Mr. Huebner lost $200,000.

When the property was sold, Group Headquarters, Inc. received $517,745.37, which was the equity owing to it, and ultimately to Plaintiff Huebner. Mr. Tangwall, however, fraudulently transferred that amount to his own bank account and spent it. Thus, Plaintiff Huebner is entitled to a judgment in the amount of $517,745.37 against Defendant Tangwall.

Plaintiff further testified that, had he been able to participate in the sale of the property at issue, as the rightful President of Group Headquarters, Inc., he could have saved $84,000 in real estate broker commissions. Thus, Mr. Huebner is entitled to a judgment against Defendant in the amount of $84,000.

Based upon the foregoing, the undersigned recommends that a judgment for compensatory damages in the amount of $801,745.37 be entered for Plaintiff Bradford Huebner against Defendant Donald Tangwall.

## II. **Punitive Damages**

At the hearing, Plaintiffs requested punitive damages in an amount equal to three times the compensatory damages. Although the undersigned orally indicated an intention to

2

recommend that Judge Trauger award punitive damages in that amount, the undersigned later concluded that it would be improper simply to recommend that amount of punitive damages to Judge Trauger simply because that amount seemed to be reasonable under the circumstances. *Id.* Thus, the undersigned entered an Order discussing the fact that this Court was required to apply the substantive law of Tennessee to Plaintiffs' claims, including those for punitive damages. *Id.* In that Order, the Court noted that the Sixth Circuit had previously recognized nine factors to be considered in determining punitive damages awards under Tennessee law. *See Clarendon Ltd. v. Foster,* 1993 U.S. App LEXIS 23059 (6th Cir.), *citing Hodges v. S. C. Toof & Co.,* 833 S.W.2d 896, 901-902 (Tenn. 1992). Docket No. 126, p. 2.

Thus, on January 27, 2006, the undersigned entered an Order stating in part as follows:

> Therefore, within twenty (20) days of the entry of this Order, Plaintiffs shall submit proposed Findings of Fact and Conclusions of Law concerning the issue of punitive damages and the appropriate amount thereof. These Findings of Fact and Conclusions of Law shall specifically address the requirements of *Hodges* and *Clarendon* discussed above.
>
> . . .
>
> Thus, in formulating their proposed Findings of Fact, Plaintiffs may rely upon all the well-pleaded allegations of fact in Plaintiffs' Amended Complaint. If Plaintiffs wish to submit Affidavits concerning the issue of punitive damages, they may, but are not required to, do so.

*Id.*, p. 2-3.

Plaintiffs did not submit proposed Findings of Fact and Conclusions of Law. Instead, Plaintiffs filed an "Affidavit in Support of Punitive Damages," executed by Plaintiff Bradford L. Huebner. Docket No. 128. Despite Plaintiffs' failure to comply with the Court's Order, the Court will accept the Affidavit of Plaintiff Bradford L. Huebner as evidence in support of an

3

award of punitive damages.

In *Hodges v. Toof*, the Tennessee Supreme Court recognized the following nine factors that should be considered in determining an appropriate award of punitive damages:

> (1) The defendant's financial affairs, financial condition, and net worth;
>
> (2) The nature and reprehensibility of defendant's wrongdoing, for example:
>
>   (A) the impact of defendant's conduct on the plaintiff, or
>
>   (B) the relationship of defendant to plaintiff;
>
> (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
>
> (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
>
> (5) The expense plaintiff has borne in the attempt to recover the losses;
>
> (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be excess of the profit in order to deter similar future behavior;
>
> (7) Whether, and the extent to which, defendant has been subjected to previous punitive damages awards based upon the same wrongful act;
>
> (8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and
>
> (9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

833 S.W.2d at 901-02.

Mr. Huebner's Affidavit addresses each of these nine factors. The Affidavit essentially

4

sets out a long-term scheme by Defendant to defraud and to extort money from Plaintiff Bradford Huebner. The following facts are established in Mr. Huebner's Affidavit.

Mr. Huebner met Defendant in 1995. Defendant introduced himself as a "Financial Planner specializing in trusts and estate planning," and a "self-taught lawyer." Defendant convinced Mr. Huebner to set up several trusts that were domiciled in Saipan, the capital of the Northern Mariana Islands, and Defendant drafted the trust documents. One of these trusts was the Saratoga Trust. At that time, however, no property was transferred to the trusts.

In 2002, Defendant contacted Plaintiff and convinced him to form a corporation, Group Headquarters, Inc., which was to be the general partner for four limited partnerships and a limited liability company. Defendant convinced Mr. Huebner to transfer "all of [his] real estate holdings" into these various entities. At some point, Defendant became a Co-Trustee of the Saratoga Trust, which was later named the "beneficiary" of Mr. Huebner's property.

By later 2003, Defendant began demanding that he be "bought out" of his position as a Trustee of Saratoga Trust and other various interests in the legal entities he had created. Defendant demanded amounts ranging from $250,000, to compensate him for legal services rendered, to "millions of dollars and a combination of cash and deeds to [Mr. Huebner's] property."

In December 2003, Defendant and his "significant other" at the time, Co-Defendant Cheryl Murray, "supposedly" held a "secret meeting" of Group Headquarters, Inc., the general partner of the limited partnerships and limited liability company discussed above. Defendants Tangwall and Murray allegedly voted Mr. Huebner out as President and Treasurer of Group Headquarters, Inc., and Defendant "named himself President and Treasurer." Defendant then

5

used these false titles and forged several documents to steal property from Mr. Huebner at Interstate 65 and Bear Creek Highway in Maury County, Tennessee.

Following the sale of the referenced property, Defendant took the $517,749 equity from that sale and deposited that money into a bank account over which Mr. Huebner had no authority. Defendant converted that money to his own use, apparently asserting that he was entitled to that amount as a "Trustee's fee."

Additionally, shortly after Defendant converted the $517,749 referred to above, he sent a letter to Mr. Huebner's bankruptcy attorney stating in part that he "fully expect[ed]" that Plaintiff Huebner would be indicted for "SEC violations, tax fraud, wire fraud and mail faud . . . ." Plaintiff believes that the purpose of these threats was an attempt to intimidate him into paying Defendant "millions of dollars to get him out of my life . . . ."

Plaintiff Huebner also points to the fact that this Court entered a Temporary Restraining Order on August 25, 2004, which enjoined Defendant from:

> (A) Spending, secreting, transferring, or in any other way alienating the proceeds of the sale of Plaintiffs' property located on Interstate 65 in Tennessee.
>
> (B) Transferring, selling, assigning, secreting, or in any other way disposing of the assets of the Saratoga Trust or Group Headquarters, Inc.

Docket No. 5, p. 2.

Plaintiff's Affidavit, however, establishes that Defendant spent $81,274.99 of the funds covered by the injunction in violation of the injunction. The Affidavit further states, "All of the other money was spent just before the injunction could be put in place."

Plaintiff Huebner further establishes that he has spent "tens of thousands of dollars" in

6

attempting to recover his losses because of Defendant's conduct. He states that he was forced to file bankruptcy and incurred over $100,000 in attorneys' fees. He further states that he has incurred $30,000 in attorneys' fees in the instant case.

In discussing the "other relevant circumstances," Mr. Huebner's Affidavit refers to the fact that Defendant "lied time and again during the course of his deposition." The undersigned has previously discussed that issue in a Report and Recommendation submitted September 1, 2005. Docket No. 98, p. 4-6. Additionally, Mr. Huebner's Affidavit states, "I am aware that [Defendant] has bragged to third parties that he is not worried about the Tennessee Court because this is only a civil matter and nobody will be able to find his assets if he gets a judgment against him." Docket No. 128, p. 8.

For the foregoing reasons, the undersigned concludes that an award of punitive damages in an amount equal to two times the compensatory damages established in this case, is appropriate. *See, e.g., Clark v. Chrysler Corp.*, 436 F.3d 594 (6th Cir. 2006) (approving a punitive damage award of twice the amount of compensatory damages). Therefore, the undersigned recommends that Plaintiffs be awarded punitive damages against Defendant Donald Tangwall in the amount of $1,603,490.74.

### III. Previously-Awarded Sanctions

The undersigned further notes that the Court has previously granted sanctions against Defendant Tangwall in the following amounts: $6,622.32 (Docket No. 116); $750 (*id.*); $5,803.46 (Docket No. 89); and $3,371.73 (Docket No. 58).

### IV. Declaratory Judgment

Plaintiffs' Amended Complaint also sought a declaratory judgment, declaring the formation of certain entities to be void ab initio because of the fraud committed by Defendant in forming those entities. Those entities are as follows:

>Group Headquarters, Inc.
>Nathan Bedford Forest Limited Partnership
>John Bell Hood Limited Partnership
>Long Street Limited Partnership
>J.E.B. Stuart Limited Partnership
>The Reserve L.L.C.

Based upon the testimony of Mr. Huebner at the hearing that these entities were all created as a result of fraud on the part of Defendant Donald Tangwall, the undersigned concludes that such a declaratory judgment should issue.

### V. Propriety of the Entry of a Final Default Judgment Against Defendant Donald Tangwall

There is authority for the proposition that, when a default is entered against one defendant in a multi-defendant case, a court should withhold the actual granting of a default judgment until the trial of the action on the merits against the remaining defendants. *See, e.g., Farzetta v. Turner & Newall, Ltd.,* 797 F.2d 151, 153-54 (3rd Cir. 1986); *Exquisite Form Ind., Inc., v. Exquisite Fabrics of London,* 378 F. Supp. 403, 416 (S.D.N.Y. 1974). According to *Farzetta*, the reason for this rule is essentially the "absurdity" that might result if a default judgment were entered against one defendant and the other defendants were later exonerated on some basis that would clearly have been applicable to the defaulted defendant. 797 F.2d 151, 153-54, *citing Frow v. De La Vega*, 42 U.S. (15 Wall.) 552 (1872). In the case at bar, however, the default against Defendant was a sanction based upon his failure to follow Court Orders. Thus, the situation described in *Farzetta* is not applicable.

8

The fact that this is a multi-defendant case, however, gives rise to another issue. Even though the undersigned is recommending the entry of a declaratory judgment and a monetary judgment in favor of Plaintiffs against Defendant, that judgment will not be a final judgment, pursuant to Fed. R. Civ. P. 54(b) unless Judge Trauger makes an express determination that there is no just reason for delay and expressly directs the entry of judgment. Fed. R. Civ. P. 54(b) provides as follows:

> When more than one claim for relief is presented in an action, where there is a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

This action involves claims by Plaintiffs against two Defendants: Donald Tangwall and Cheryl Murray. Additionally, there is a pending Motion to hold Defendant Tangwall in civil and criminal contempt. Docket No. 118-1. Given these facts, the undersigned does not recommend that Judge Trauger make an express determination that there is no just reason for delay or an express direction for the entry of judgment in this case.

## VI. Conclusion

For the foregoing reasons, the undersigned recommends that a judgment be entered in favor of Plaintiffs against Defendant Donald A. Tangwall in the total amount of $2,421,783.02, representing compensatory damages, punitive damages, and sanctions. Additionally, the

9

undersigned recommends that a declaratory judgment be entered in this action declaring the formation of the following entities to be void ab initio:

        Group Headquarters, Inc.
        Nathan Bedford Forest Limited Partnership
        John Bell Hood Limited Partnership
        Long Street Limited Partnership
        J.E.B. Stuart Limited Partnership
        The Reserve L.L.C.

Finally, the undersigned does not recommend that Judge Trauger make an express determination that there is no just reason for delay or an express direction for the entry of a judgment in this case pursuant to Fed. R. Civ. P. 54(b).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

                                                E. Clifton Knowles
                                                United States Magistrate Judge